DECISION
Before the Court is Defendants The Beacon Mutual Insurance Company (Beacon), Joseph Arthur Solomon (Solomon), Michael Dennis Lynch, and John Does 1-100's (collectively, Defendants) Motion in Limine. Defendants seek an order preventing Plaintiffs from relying on a Rhode Island Department of Business Regulation (DBR) April 2007 Market Conduct Examination Report (Examination Report) asprima facie evidence in this case. *Page 2 
 I Facts and Travel
The facts and travel of this case have been well-documented in several prior written decisions of this Court and our Supreme Court.[1] For that reason, the Court will not repeat the facts and travel of this case.
 II Discussion
"A motion in limine is `widely recognized as a salutary device to avoid the impact of unfairly prejudicial evidence upon the jury and to save a significant amount of time at the trial.'"Owens v. Silvia, 838 A.2d 881, 889 (R.I. 2003) (quotingBHG, Inc. v. F.A.F., Inc., 784 A.2d 884, 886 (R.I. 2001). "It is well settled that `a motion in limine is not intended to be a dispositive motion.'" BHG, Inc.,784 A.2d at 886 (underscoring added) (quoting Ferguson v.Marshall Contractors, Inc., 745 A.2d 147, 150 (R.I. 2000)). Rather, "it has been used in this state primarily to `prevent the proponent of potentially prejudicial matter from displaying it to the jury . . . in any manner until the trial court has ruled upon its admissibility in the context of the trial itself.'"Id. (quoting Ferguson, 745 A.2d at 150-51);see also Owens, 838 A.2d at 889 *Page 3 
(underscoring added) (quoting State v. Cook,782 A.2d 653, 654-55 (R.I. 2001)) (explaining that "`the granting of a motion in limine need not be taken as a final determination of the admissibility of the evidence.' . . . The trial justice can reconsider the motion in limine during the trial or in rebuttal."). Furthermore, a determination to exclude evidence "`is within the sound discretion of the trial justice and, absent a showing of abuse of this discretion, [our Supreme Court] will not disturb a ruling concerning the admissibility of evidence.'"Fravala v. City of Cranston ex rel. Baron,996 A.2d 696, 703 (R.I. 2010) (quoting Perrotti v.Gonicberg, 877 A.2d 631, 642 (R.I. 2005)).
 A
In their Motion in Limine, Defendants seek to prevent Plaintiffs from relying on DBR's Examination Report as prima facie
evidence.[2] They assert that G.L. 1956 § 27-13.1-4(e) clearly and exclusively applies to legal or regulatory actions brought by the DBR in the context of a market conduct examination and does not extend to private litigants.[3] For their part, Plaintiffs *Page 4 
argue that the plain language of § 27-13.1-4(e) provides that "findings of fact and conclusions made pursuant to [an examination]" are admissible as "prima facie evidence in any legal or regulatory action," including this civil action.See § 27-13.1-4(e) (underscoring added).
It is well established that the interpretation of a statute is a question of law. See Palazzolo v. State ex rel.Tavares, 746 A.2d 707, 711 (R.I. 2000). "`[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.'" Ryan v. City of Providence,11 A.3d 68, 71 (R.I. 2011) (quoting Accent Store Design,Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996));see also Retirement Bd. of Emps.' Ret. Sys. ofState v. DiPrete, 845 A.2d 270, 297 (R.I. 2004) (affirming that when a statute is clear on its face, the Court must give the statute its plain meaning and should not look elsewhere to discern the legislative intent"). Accordingly, when "a statutory provision is unambiguous, there is no room for statutory construction and [this Court] must apply the statute as written." Ryan,11 A.3d at 71; see also State v. Santos,870 A.2d 1029, 1032 (R.I. 2005) (explaining that the "plain statutory language is the best indicator of legislative intent"). "It is only when confronted with an unclear or ambiguous statutory provision that this Court will examine the statute in its entirety to discern the legislative intent and purpose behind the provision."Liberty Mut. Ins. Co. v. Kaya, 947 A.2d 869, 872 (R.I. 2008) (quoting State v. LaRoche, 925 A.2d 885, 888 (R.I. 2007)).
Here, the challenged provision provides:
 "Nothing contained in this chapter shall be construed to limit the director's authority to terminate or suspend an examination in order to pursue other legal or regulatory action pursuant to the insurance laws of this state. Findings of fact and conclusions made pursuant to an examination shall be prima facie evidence in any legal or regulatory action." Sec. 27-13.1-4(e) (underscoring added). *Page 5 
In light of the parties' memoranda and arguments before this Court, it is clear to the Court that § 27-13.1-4(e) is susceptible to multiple reasonable interpretations. For that reason, the Court finds the provision ambiguous, and is therefore, ripe for interpretation. See Ryan, 11 A.3d at 70-71 (explaining that the Court will look to the entire statute and not an isolated provision when the language of a statute can be given more than one interpretation).
Our Supreme Court has directed that when construing a statute, the Court's "`ultimate goal is to give effect to the purpose of the act as intended by the Legislature.'" Id. (quoting D'Amico v.Johnston Partners, 866 A.2d 1222, 1224 (R.I. 2005)). Indeed, it is the "[C]ourt's responsibility in interpreting a legislative enactment to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." State v. Greenberg,951 A.2d 481, 489 (R.I. 2008) (quoting Brennan v. Kirby,529 A.2d 633, 637 (R.I. 1987)); see also Ryan,11 A.3d at 71 (quoting In re Almeida,611 A.2d 1375, 1382 (R.I. 1992)).
Legislative intent "`is discovered from an examination of the language, nature, and object of the statute.'" Ryan,11 A.3d at 71 (quoting Berthiaume v. School Comm. ofWoonsocket, 121 R.I. 243, 247, 397 A.2d 889, 892 (1979)). Notwithstanding, this Court does not have unfettered discretion in its statutory construction. Rather, the Court's judgment and interpretation are guided by several fundamental canons of construction.
Accordingly, this Court must begin by giving the terms of § 27-13.1-4(e) their plain and ordinary meaning. SeeAccent Store Design, Inc., 674 A.2d at 1226. Plaintiffs contend that under this doctrine, construction of § 27-13.1-4(e) begins and ends with the statement that "[f]indings of fact and conclusions made pursuant to an examination shall be prima facie evidence in any legal or regulatory action."See § 27-13.1-4(e) (underscoring added). Plaintiffs, *Page 6 
however, have improperly construed this provision in isolation to suit their needs, and the Court is simply not in accord. It is axiomatic that the Court, when construing a statute, may not focus on a provision — or each term of a provision — in isolation, but must consider the entirety of the statute.[4] SeeSorenson v. Colibri Corp., 650 A.2d 125, 128 (R.I. 1994);accord Bailey v. American Stores, Inc./Star Market,610 A.2d 117, 119 (R.I. 1992); see also Rhode IslandBd. of Governors for Higher Educ. v. Newman,688 A.2d 1300, 1302 (R.I. 1997) (finding that a Court must endeavor to ascertain the legislative intent, "examin[ing] the statute in its entirety and then the individual provisions in the context of the whole, not as if each provision were independent of the whole"). "It is entirely proper for [the Court] to look to `the sense and meaning fairly deductible from the context.'" Ryan,11 A.3d at 70-71 (quoting In re Brown,903 A.2d 147, 150 (R.I. 2006)). Here, the first sentence of § 27-13.1-4(e) is plainly limited to the director's authority to terminate or suspend an examination to pursue "other legal or regulatory action." For that reason, the Court is of the opinion that when the terms "any legal or regulatory action" in the subsequent sentence are read in conjunction with the prior, the scope of § 27-13.1-4(e) should be limited to legal or regulatory actions pursued by the director. Indeed, in view of the language of the preceding sentence, the hypothetical inclusion of language limiting "any regulatory or legal action" to those proceedings "brought as part of the director's official duties" would simply be superfluous and unnecessary.
Nonetheless, Plaintiffs maintain that the Legislature, if it had so intended, could have limited the use of an examination report to actions brought by the director, simply by including the requisite language. In the absence of such explicit language, they contend, the Legislature's *Page 7 
intent is clear and no restriction should be imposed. The Court's construction, however, is tempered by the principle that statutes must not be construed to achieve meaningless or absurd results.See Long v. Dell, Inc., 984 A.2d 1074, 1081 (R.I. 2009);see also Chambers v. Ormiston,935 A.2d 965, 967 (R.I. 2008). Throughout the Examinations Statute, the use or disclosure of an examination report or other ancillary information is within the control and discretion of the director.See, e.g., §§ 27-13.1-5(e), -5(f). Moreover, any reference to legal proceedings or regulatory actions relates solely to those initiated or conducted by the director. See,e.g., §§ 27-13.1-(4)(b), -(4)(e), -4(f), -5(e), -5(f). Simply put, the notion that Plaintiffs may now use the Examination Report as prima facie evidence was simply not contemplated by the Legislature, would be absurd, and would render language within the statute meaningless. Particularly where, as here, the Examination Statute plainly provides under "Publication and use" that "in the event the director determines that regulatory action is appropriate as a result of any examination, he or she may initiate any proceedings or actions as provided by law," the Court deems it appropriate to reject Plaintiffs' overly broad construction.[5]See § 27-13.1-5(e)(3).
Furthermore, the Court is mindful that its "interpretation of an ambiguous statute is grounded in policy considerations and [that it should] not apply a statute in a manner that will defeat its underlying purpose." Harvard Pilgrim Health Care of New England,Inc. v. Gelati, 865 A.2d 1028, 1037 (R.I. 2004); seealso Brennan v. Kirby, 529 A.2d 633, 637 (R.I. 1987) (noting that when construing a statute, a court must look to the intent of the Legislature and attribute to *Page 8 
the enactment a meaning most consistent with the intended purpose of the statute). Here, it is patently obvious from its language and numerous provisions, that the Examinations Statute was "intended to enable the director to adopt a flexible system of examinations" by which to regulate "the activities, operations, financial condition, and affairs of all persons transacting the business of insurance in this state and all persons otherwise subject to the jurisdiction of the director." Sec. 27-13.1-1 (emphasis added). Thus, the Court concludes that the Legislative intent underlying the enactment of the Examinations Statute was to assist the director in the administration of his duties, and therefore, the Court declines to extend its provisions to civil litigants attempting to satisfy their evidentiary burden. Accordingly, the Court finds that § 27-13.1-4(e) is limited to actions brought by the director pursuant to the Examinations Statute and may not be invoked by the Plaintiffs.
 III Conclusion
After due consideration of all the evidence, together with the arguments advanced by counsel at the hearing and in their memoranda, the Court finds that the Examinations Statute, when viewed in its entirety, was solely intended to assist the director in the administration of his duties. Consequently, the Court finds that § 27-13.1-4(e) does not authorize Plaintiffs to use the Examination Report as prima facie evidence in this case, and therefore, grants Defendants' Motion in Limine.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.
[1] See Heritage Healthcare Servs., Inc. v. the BeaconMut. Ins. Co., No. 02-7016, 2011 WL 202299 (R.I. Super. Ct. Jan. 19, 2011);Heritage Healthcare Servs., Inc. v. Marques,14 A.3d 932 (R.I. 2011); Heritage Healthcare Servs.,Inc. v. Beacon Mut. Ins. Co., No. PB-02-7016, 2009 WL 3328481 (R.I. Super. Ct. Apr. 15, 2009);Heritage Healthcare Servs., Inc. v. Beacon Mut. Ins. Co., No. PB-02-7016, 2008 WL 4376187 (R.I. Super. Ct. Sept. 4, 2008);Heritage Healthcare Servs., Inc. v. Marques, No. PB-06-4420, 2007 WL 2692031 (R.I. Super. Ct. Sept. 6, 2007);Heritage Healthcare Servs., Inc. v. Marques, No. PB-06-4420, 2007 WL 2405917 (R.I. Super. Ct. Aug. 9, 2007);Heritage Healthcare Servs., Inc. v. Beacon Mut. Ins. Co., No. PB-02-7016, 2007 WL 1234481 (R.I. Super. Ct. Apr. 17, 2007);Heritage Healthcare Servs., Inc. v. Beacon Mut. Ins. Co., No. PB-02-7016, 2005 WL 2101412 (R.I. Super. Ct. Aug. 29, 2005);Heritage Healthcare Servs., Inc. v. Beacon Mut. Ins. Co., No. PB-02-7016, 2004 WL 253547 (R.I. Super. Ct. Jan. 21, 2004).
[2] "Prima facie evidence" is defined as "[e]vidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports, but which may be contradicted by other evidence." See Black's LawDictionary at 1190 (6th ed. 1990).
[3] Section 27-13.1-4(e) is a subsection of the Examinations Statute, G.L. 1956 § 27-13.1-1, etseq. (Examinations Statute). The Examinations Statute was enacted by the General Assembly in 1992 "to provide an effective and efficient system for examining the activities, operations, financial conditions, and affairs of all persons transacting the business of insurance in this state and all persons subject to the jurisdiction of the director." P.L. 1992, ch. 445, § 1. Its provisions set forth a statutory framework "intended to enable the director [of the DBR] to adopt a flexible system of examinations for the administration of the insurance and insurance related laws of this state." Sec. 27-13.1-1. Specifically, the Examinations Statute sets forth mechanisms and procedures by which the DBR may conduct market conduct examinations and coordinate its regulatory efforts with other government agencies. See,generally, §§ 27-13.1-3, -4. Throughout the course of its investigation, the DBR is not only granted access to all books, records, and other information relating to the business and affairs of the examined company, but is also authorized to retain outside professionals and specialists to serve as examiners to conduct the examination. See id. Although the DBR is not required to complete an examination initiated under this chapter, the Examinations Statute also outlines the procedures for filing, adopting, publishing, and using an examination report.See, generally, §§ 27-13.1-4, -5.
[4] For a discussion of the whole act rule and its application in a variety of cases, see James J. Brudney Corey Ditslear,Canons of Construction and the Elusive Quest for NeutralReasoning, 58 Vand. L. Rev. 1 (2005).
[5] The Examinations Statute is modeled after the Model Law on Examinations by the National Association of Insurance Commissioners.See N.A.I.C. Model Laws, Regulations and Guidelines: ModelLaw on Examination, NAIC 390-1 (2011). In particular, the language of § 27-13.1-4(e) is identical to its model law counterpart. Notably, while numerous states have adopted verbatim — or in some lightly modified form — the language of § 27-13.1-4(e), no other court has yet addressed the issue of whether it should be extended to actions initiated other than by the director. *Page 1